Phillip CROSSEN, Fran Pozzuto, Peter Scott, Pat Craddock and Lexington Women's Liberation Group, Plaintiffs-Appellants,

v.

John BRECKENRIDGE, Attorney-General of the Commonwealth of Kentucky, and George Barker, Commonwealth Attorney for the 22nd Judicial District of Kentucky, Defendants-Appellees.

No. 20852.

United States Court of Appeals, Sixth Circuit.

June 23, 1971.

Robert Allen Sedler, Lexington, Ky., (William H. Allison, Jr., Lexington, Ky., on the brief), for appellants.

Michael R. Moloney, Asst. Commonwealth Atty., 22nd Judicial District, Lexington, Ky., for George E. Barker.

M. Curran Clem, Asst. Atty. Gen., Frankfort, Ky., for John Breckenridge.

Before EDWARDS, MILLER and KENT, Circuit Judges.

WILLIAM E. MILLER, Circuit Judge.

This appeal arises from the dismissal of a complaint challenging the constitutionality of the Kentucky anti-abortion statute, Ky.Rev.Stat. 436.020.[1] The appellants are Phillip Crossen, a physician specializing in obstetrics and gynecology, a pregnant woman, Pat Craddock, who allegedly has been denied an abortion, Fran Pozzuto, a non-pregnant woman, Peter Scott, a minister, and a women's rights organization. Appellees are the Attorney General of Kentucky and the District Attorney in Fayette County, Kentucky. The action seeks a declaratory judgment pursuant to 28 U.S.C. Secs. 2201 and 2202 that the statute is unconstitutional, and a permanent injunction pursuant to 42 U.S.C. Sec. 1983 enjoining the appellees from enforcing, threatening to enforce, or otherwise applying the challenged statute. Federal jurisdiction is invoked under 28 U.S.C. Secs. 1331 and 1343.[2] No formal charge of a statutory violation has been made against any of the plaintiffs. Because

1. Ky.Rev.Stat. 436.020 provides:

Abortion or miscarriage. (1) Any person who prescribes or administers to any pregnant woman or to any woman whom he has reason to believe pregnant, at any time during the period of gestation, any drug, medicine or other substance, or uses any instrument or other means, with the intent to procure the miscarriage of that woman, unless the miscarriage is necessary to preserve her life, shall be fined not less than five hundred dollars nor more than one thousand dollars, and confined in the penitentiary for not less than one nor more than ten years.

(2) If, by reason of any of the acts described in subsection (1) of this section, the miscarriage of the woman is procured and she does miscarry, causing the death of the unborn child, whether before or after quickening time, the person violating the provisions of subsection (1) of this section shall be confined in the penitentiary for not less than two nor more than twenty-one years.

(3) In any prosecution under subsection (1) or (2) of this section or under K.R.S. 435.040, the consent of the woman to the performance of the operation or the administering of the drug, medicine or other substance shall be no defense, and she shall be a competent witness in the prosecution. For the purpose of testifying she shall not be considered an accomplice.

2. No question is made that the complaint alleges a "non-justiciable" case, as that term is used in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962) and other cases.

injunctive relief based on the alleged unconstitutionality of a state statute is demanded, the complaint also seeks to have a three-judge district court convened pursuant to 28 U.S.C. Secs. 2281 and 2284. Each individual appellant seeks to represent a class of similarly situated persons. The state is alleged to be in conflict with rights guaranteed by the first, fourth, fifth, eighth, ninth, and fourteenth amendments to the Constitution. The district court dismissed the action on motion of appellees for failure to state a claim, holding in a bench opinion that there was no actual case or controversy to invoke the court's jurisdiction.

### I.

 The district court's opinion concludes that it was without jurisdiction to act in the case. Apparently this conclusion was reached because the trial judge was of the view that the complaint sought only an advisory opinion and therefore did not present a "case or controversy," and that the plaintiffs lacked standing. Of course, the statutes requiring a three-judge court in certain cases, 28 U.S.C. Secs. 2281 and 2284, require the existence of federal subject-matter jurisdiction of the district court. *See* Lion Manufacturing Corp. v. Kennedy, 117 U.S.App.D.C. 367, 330 F.2d 833 (1964). In order to determine whether to request a three-judge court, the district judge must initially find that plaintiffs with standing have presented a "case or controversy." *See* American Commuters Association v. Levitt, 279 F. Supp. 40 (S.D.N.Y.1967), aff'd 405 F.2d 1148 (2d Cir. 1969). As was stated by the Court of Appeals for the District of Columbia, "federal courts, at any rate,

whose powers fall wholly within the ambit of Article III of the Constitution, lack jurisdiction to respond to * * * an application [for an advisory opinion]. Whether the relief sought is legal or equitable, injunctive or declaratory, it must be within the framework of a true case or controversy capable of meaningful adjudication." Lion Manufacturing Corp. v. Kennedy, *supra*, 330 F.2d at 838. If the single judge to whom a request for a three-judge court is addressed properly determines that there is no jurisdiction in his court he may dismiss the complaint without requesting a three-judge court. *Id.* at 840–841.

 The parties on appeal have viewed the decision of the district court substantially as we have stated it, for both sides have briefed as the only issue for decision the question whether the complaint presented a case or controversy within the constitutional jurisdiction of the federal courts. For the reasons set out below, we hold that the appellants Crossen and Craddock have standing, and have presented a case or controversy to the district court. Whether this is also true as to appellant Scott must be determined on remand as indicated below. Although the district court purported to rule, as we hold erroneously, only on the lack of a federally cognizable claim, we shall not so limit our decision. Rather, in our view, the allegations of the complaint giving rise to Article III jurisdiction, are also sufficient to invoke the jurisdiction of a three-judge court. Consequently, it is proper to treat the present appeal as also arising from a denial of a motion to convene the statutory court.[3] *See* Schackman v. Arnebergh, 387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967); Idlewild Bon Voyage

---

3. This approach is appropriate and justified because the district court apparently considered the standing issue in light of the requirements for a three-judge court. The ruling on standing was apparently based in part on the belief that no injunctive relief would be available to appellants, a remedy available only from a three-judge court since the complaint attacked the constitutionality of a state statute. As a practical matter, therefore, the district court ruled adversely on the request for a three-judge court in deciding the standing issue against appellants. By so treating the decision of the lower court and ruling on the three-judge court question, we may in the interest of judicial economy avoid the necessity of additional appeals to this Court.

Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962).

## II.

 The district judge held that the complaint sought an advisory opinion and was thus not cognizable in federal court. In particular, he held that appellant Crossen was not in position to ask for a declaratory judgment before any violation of the statute was consummated.[4] This view of "case or controversy" we think, is too narrow. The case or controversy requirement places two limitations on Article III courts. The first is that courts may not encroach on areas reserved to the other branches of government, and the second is that courts may decide only those cases "presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process." Flast v. Cohen, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). An actual controversy is supplied by plaintiffs with a "personal stake and interest," Barlow v. Collins, 397 U.S. 159, 164, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970), Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), arrayed against persons with adverse legal interests in a sufficiently immediate adversary context to warrant declaratory relief. Golden v. Zwickler, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed. 2d 113 (1969). Neither violation of the statute nor the pendency of a prosecution is a sine qua non for a declaratory judgment action challenging the constitutionality of a state criminal statute. See Epperson v. Arkansas, 393 U.S. 97, 101–102, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), in which the Supreme Court decided a constitutional challenge to a state statute prohibiting the teaching of evolution in public schools in the absence of a record of any prosecutions under the statute. (But cf. Doe v. Randall, 314 F.Supp. 32 (D.Minn.1970) (three-judge court)). Nor is this a case in which there is an apparent state policy of non-enforcement of a criminal statute making its "mere existence * * * insufficient grounds to support a federal court's adjudication of its constitutionality * * *." Poe v. Ullman, 367 U.S. 497, 507, 81 S.Ct. 1752, 1758, 6 L.Ed.2d 989 (1961).[5] Nor do we think that the Constitution requires litigants to subject themselves to the possible harm of a criminal prosecution before seeking relief from an allegedly unconstitutional statute, see Pierce v. Society of Sisters, etc., 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925), when actual interference with protected rights is alleged or shown. Cf. Abbott Laboratories v. Gardner, 387 U.S. 136, 148–156, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

 In deciding whether there is a case or controversy frequently the issue of standing must be decided. See Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L. Ed.2d 663 (1962). Standing "concerns,

---

4. Although the bench opinion touches several other points, including abstention, the rationale of the holding clearly seems to be that there was no actual controversy because there had been no violation of the law in question. Speaking only to the position of appellant Crossen, the physician, the district court stated that appellant desired to perform abortions but wanted to avoid criminal liability by seeking an advisory opinion that the criminal statute was unconstitutional. It does not specifically appear that the district judge considered the allegations of any of the other appellants independently from those of Dr. Crossen.

5. See, e. g., Brown v. Commonwealth, 440 S.W.2d 520 (Ky.1969); Bain v. Commonwealth, 330 S.W.2d 400 (Ky. 1959); Dalzell v. Commonwealth, 312 S.W.2d 354 (Ky.1958); Dotye v. Commonwealth, 289 S.W.2d 206 (Ky.1956), all appellate decisions in criminal prosecutions under the Kentucky statute. Cf. Doe v. Dunbar, 320 F.Supp. 1297, 1300, (D.Colo.1970) (three-judge court) and Doe v. Bolton, 319 F.Supp. 1048, 1052–1053 (N.D.Ga.1970) (three-judge court), review granted and question of jurisdiction passed to the hearing on the merits 402 U.S. 941, 91 S.Ct. 1614, 29 L.Ed.2d 109 (1971) for cases in which the continued vitality of Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) is called into question in light of Epperson v. Arkansas, 393 U.S. 97, 101–102, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968).

apart from the 'case' or 'controversy' test, the question whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970). As was also said by the Supreme Court: " * * * when standing is placed in issue in a case, the question is whether the person whose standing is challenged is a proper party to request an adjudication of a particular issue and not whether the issue itself is justiciable." Flast v. Cohen, *supra*, 392 U.S. at 99–100, 88 S.Ct. at 1952. In deciding which appellants in the present action are properly before the district court, the *Flast* case teaches that we are to look to the substantive issues "to determine whether there is a logical nexus between the status asserted [by an appellant] and the claim sought to be adjudicated." Flast v. Cohen, *supra*, 392 U.S. at 102, 88 S.Ct. at 1953.

### III.

■ The substance of the complaint of the two female appellants, pregnant and non-pregnant, is that the statute deprives them of a fundamental right of marital and bodily privacy under the ninth amendment in deciding whether to carry a pregnancy to term. *See* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). The complaint raises a variety of other constitutional issues, including alleged violations of the first, eighth, and fourteenth amendments, but the right to privacy as expressed in *Griswold* is the basic and central theme of the challenge of the women. At the commencement of the action appellant Craddock was pregnant and had allegedly been denied an abortion because of the existence and threatened enforcement of the statute in question. On these facts we find that appellant Craddock has standing based on a sufficient nexus between her status and the

constitutional claim of the right to decide privately whether to bear her child. Flast v. Cohen, *supra*, 392 U.S. at 102, 88 S.Ct. 1942. We further hold that there exists a sufficient degree of contentiousness between appellant Craddock and the appellees, who are charged with the responsibility of enforcing the statute, to present an "actual controversy." Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); and *see* Steinberg v. Brown, 321 F.Supp. 741 (N.D. Ohio 1970), and cases cited.

■ Appellant Pozzuto, on behalf of herself and all other similarly situated married women, alleges that she is not pregnant but may desire to terminate future pregnancies and would be unable to obtain a medical abortion performed by a physician. It does not appear that this appellant presented more than a hypothetical case to the district court. Her only connection with the asserted right of marital privacy is that she may become pregnant in the future. This is not a sufficient nexus to distinguish her from any other woman capable of bearing children. No injury is alleged, actual or threatened, other than the hypothetical possibility that she may be denied an abortion should she become pregnant. Accordingly we hold that appellant Pozzuto does not have standing to challenge the Kentucky abortion statute under the federal Constitution. *See* Doe v. Dunbar, *supra*, 320 F.Supp. 1297, 1300 (D.Colo. 1970) (three-judge court). Similarly, we find that the appellant, Women's Liberation Group of Lexington, lacks standing to maintain the action as no facts are alleged to establish a logical nexus between this group or any of its members and the asserted constitutional claim.

■ Appellant Crossen's claim has essentially two aspects. First he alleges that he is unable to practice medicine to the best of his professional judgment and ability because the contested statute renders him criminally liable for performing a medical operation in terms too vague to inform him of the standard

of criminal conduct.[6] He secondly alleges that he is deterred and hindered in treating patients asking for abortions, thus claiming an interference with the alleged rights of the pregnant women coming to him. We think that Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) establishes the standing of a doctor to assert the alleged rights of his patients in his own behalf, particularly in view of the fact that there is an actual threat of prosecution for performing an abortion.[7] What we have said, *supra,* concerning the absence of an actual pending prosecution applies equally with respect to the question of standing and the question of justiciability in such a case. Thus we hold that there is the requisite adversity between appellant Crossen and the appellees so as to raise an "actual controversy." *See* Corkey v. Edwards, 322 F.Supp. 1248, 1250 (W.D.N.C.1971) (three-judge court).

▬▬ Appellant Scott, a minister of religion, alleges that he is inhibited in counselling parishioners who seek his advice concerning abortions. It seems that the allegations in the complaint that the statute violates the first amendment's guarantees of free expression may have been included in behalf of appellant Scott. The complaint also alleges that the statute violates the establishment clause of the first amendment in that it enacts as law the religious beliefs of certain groups not held by other persons. The district court failed to articulate its specific reasons for dismissing the action as to any of the plaintiffs other than the plaintiff Crossen. Thus he indicated no conclusion as to the viability of the first amendment claims of appellant

Scott. The standing of a minister on the state of facts before us on appeal to challenge the statute in his own behalf on the ground that its existence has a chilling effect on the free discussion of abortion is far from clear. Compare Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) with Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). Whether he can gain standing by asserting the rights of his parishioners by analogy to the case of a physician is also not clear. Because the district court did not reach these constitutional issues or specifically consider the claims of the clergyman in deciding the case, we think it appropriate to defer decision on these matters to the three-judge district court which we hold must be convened.[8]

## IV.

"When an application for a statutory three-judge court is addressed to a district court, the court's inquiry is appropriately limited to determining whether the constitutional question raised is substantial, whether the complaint at least formally alleges a basis for equitable relief, and whether the case presented otherwise comes within the requirements of the three-judge statute." Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 715, 82 S.Ct. 1294, 1296, 8 L.Ed.2d 794 (1962). We are persuaded that this case is a proper one for a three-judge court.

▬▬ The absence of a substantial federal question may be shown when the constitutional claims are clearly without merit or their unsoundness clearly results from previous decisions of the Supreme Court. *See* California Water

---

6. The recent decision of the Supreme Court in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601 (1971), creates a serious doubt whether this contention now raises a substantial federal question. See the discussion of this point, *infra.*

7. See cases cited in note 5, *supra.*

8. We are unable to conclude, however, that the issues raised in this case by appel-

lant Scott are frivolous or insubstantial. The Supreme Court may have opportunity in the near future to rule on these issues, *see* Doe v. Bolton, 319 F.Supp. 1048 (N.D.Ga.1970) (three-judge court), review granted and question of jurisdiction passed to the hearing on the merits, 402 U.S. 941, 91 S.Ct. 1614, 29 L.Ed. 2d 109 (1971), which presents the question, among others, whether ministers may challenge a state abortion statute.

Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). That challenges to state anti-abortion statutes on federal constitutional grounds may not be characterized as insubstantial or frivolous is evidenced by the many decisions of three-judge courts to which the question has been addressed. Other than the Supreme Court's recent ruling in United States v. Vuitch, 402 U.S. 62, 91 S.Ct. 1294, 28 L.Ed.2d 601, reversing 305 F.Supp. 1032 (D.D.C. 1969), on the question of vagueness, there has as yet been no definitive ruling by that Court on the constitutional bases for such challenges. For examples of three-judge court decisions on the merits of the constitutional issue, *see, e. g.,* Corkey v. Edwards, 322 F.Supp. 1248 (W.D.N.C.1971); Steinberg v. Brown, 321 F.Supp. 741 (N.D.Ohio 1970); Doe v. Dunbar, 320 F.Supp. 1297 (D.Colo. 1970); Doe v. Bolton, 319 F.Supp. 1048 (N.D.Ga.1970), review granted and question of jurisdiction passed to the hearing on the merits, 402 U.S. 941, 91 S.Ct. 1614, 29 L.Ed.2d 109 (1971); Doe v. Randall, 314 F.Supp. 32 (D.Minn.1970) U.S. appeal pending sub nom. Hodgson v. Randall, 39 U.S.L.W. 3228 (Nov. 24, 1970); Roe v. Wade, 314 F.Supp. 1217 (N.D.Tex. 1970), review granted and question of jurisdiction passed to the hearing on the merits, 402 U.S. 941, 91 S.Ct. 1610, 29 L. Ed.2d 108 (1971); Babbitz v. McCann, 310 F.Supp. 293 (E.D.Wis.1970), appeal dismissed, 400 U.S. 1, 91 S.Ct. 12, 27 L. Ed.2d 1 (1970); Babbitz v. McCann, 320 F.Supp. 219 (granting injunction), judgment vacated, 402 U.S. 903, 91 S.Ct. 1375, 28 L.Ed.2d 643.

The complaint formally alleges a basis for equitable relief, and a three-judge court is properly convened to consider the declaratory relief sought independently of the propriety of injunctive relief on the record developed before it. *See* Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

Accordingly, the judgment of the district court dismissing the action as to appellants Fran Pozzuto and the Lexington Women's Liberation Group is affirmed. The district court's judgment of dismissal as to the appellants Crossen, Scott, and Craddock is reversed and the case is remanded as to these parties for further proceedings not inconsistent with this opinion. On remand, the district judge will take appropriate steps to request the Chief Judge of this Court to designate a statutory three-judge court. All remaining issues not resolved in this opinion respecting standing, federal jurisdiction, substantiality, validity of constitutional claims and form of relief as well as the question whether any of the remaining plaintiffs may maintain the action as a class action shall be adjudicated by the court so convened.

Affirmed in part and reversed in part and remanded for further proceedings.